# EXHIBIT B

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| BIAO WANG | ) |
|---|---|
| *Plaintiff* | ) |
| v. | ) Civil Action No. 5:21-cv-06028-PCP |
| ZYMERGEN INC., et al. | ) |
| | ) |
| *Defendant* | ) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: Baron Capital Management, Inc.
767 5th Ave., 48th Floor, New York, NY 10153

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A.

| Place: Gibson, Dunn & Crutcher LLP<br>200 Park Ave.<br>New York, NY 10166 | Date and Time:<br>12/05/2024 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 11/21/2024

*CLERK OF COURT*

OR

_____          /s/ Michael D. Celio
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Defendants Data Collective II, L.P., DCVC Opportunity Fund, L.P., and DCVC Mgmt , who issues or requests this subpoena, are:

Michael D. Celio | 310 University Avenue, Palo Alto, CA 94301 | MCelio@gibsondunn.com | 650.849.5326

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**SCHEDULE A**
**(Baron Capital Management, Inc.)**
**DEFINITIONS**

The definitions and rules of construction set forth in Federal Rule of Civil Procedure 34 are hereby incorporated by reference and apply to these Document Requests (the "Requests"). As used herein, the following terms have the meaning indicated below:

1. "ACTION" shall mean the above-captioned action pending in the U.S. District Court for the Northern District of California, styled: *Biao Wang, Individually and on Behalf of All Others Similarly Situated v. Zymergen Inc., et al.*, Case No. 5:21-cv-06028-PCP.

2. "COMMUNICATION" or "COMMUNICATIONS" shall mean any exchange of information of any kind by or through any means of transmission, including, but not limited to, email, EMS, MMS, other text messages; letters (including attachments), chat logs, video communications, video, recordings, speech, writings, documents, language (machine, foreign, or otherwise) of any kind; computer electronics or electronic data (including smart devices, tablets, and phones); sound radio, or video signals; telecommunication; telephone; messages on "social networking" platforms (including, but not limited to, Facebook, Google+, Instagram, Snapchat, WhatsApp, and X (formerly known as Twitter); shared applications for cellular phones, teletype; facsimile, telegram, microfilm, microfiche, photographic film of all types; or other media of any kind. "COMMUNICATION" or "COMMUNICATIONS" shall also include, but is not limited to, all inquiries, discussions, conversations, correspondence, contracts, negotiations, agreements, understanding, meetings, notices, requests, responses, demands, complaints, or press, publicity, or trade releases.

3. "DCVC" or "DCVC DEFENDANTS" shall mean Data Collective II, L.P., DCVC Opportunity Fund, L.P., and DCVC Management Co, LLC.

4. "DOCUMENT" or "DOCUMENTS" are defined to be synonymous in meaning and equal in scope to the usage of those terms in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is

a separate document within the meaning of this term. The term "DOCUMENT" or "DOCUMENTS" further includes, but is not limited to, any and all forms of recorded information, whether handwritten, printed, typed, or otherwise visually reproduced, electronically recorded or orally recorded, including all originals, revisions, and markups of drafts, and all files, documents, databases, emails, and other data maintained in computer-readable form. The term "DOCUMENT" or "DOCUMENTS" specifically includes, but is not limited to: working papers; COMMUNICATIONS, including intra-company COMMUNICATIONS; minutes and records of meetings; letters; facsimile transmissions; telegrams; telephone bills and records; cables; records; books; summaries or records of personal conversations or interviews; legal pleadings; affidavits; deposition transcripts; trial transcripts; forecasts; statistical statements; accountants' work papers; brochures; pamphlets; circulars; press releases; agreements; contracts; telephone messages, slips, and logs; diary entries; electronic mail and messages of every kind; calendars; reports; evaluations; assessments; analyses; test results; correspondence; memoranda; notes; video recordings of every kind; audio recordings of every kind; electronic recordings of every kind; drawings; graphics; graphs; maps; diagrams; charts; photographs; tables; indices; recordings; tapes; microfilms; reports of investigations; opinions or reports of consultants; data processing and computer printouts, tapes, disks, and data and information stored in computers or data processing equipment, together with programs and program documentation necessary to utilize or retrieve such data or information; all other mechanical or electronic means of storing or recording data or information; any other data compilation from which information can be obtained and translated through detection devices into reasonably usable form; and posts on websites or other internet-based platforms, including social media platforms.

   5.  In addition to the above definition of "DOCUMENT" or "DOCUMENTS," any comment or notation appearing on any of the DOCUMENTS described above, and not part of the original page or text, is considered a separate DOCUMENT, and any draft or preliminary form of any DOCUMENT is also considered a separate DOCUMENT.

6. "IPO" shall mean Zymergen's April 22, 2021 initial public offering of Zymergen common stock, pursuant to the Registration Statement filed by Zymergen on Form S-1 with the SEC on March 23, 2021, and, including subsequent amendments, declared effective April 21, 2021.

7. "PERSON" or "PERSONS" shall mean, without limitation, individuals, corporations, partnerships, limited partnerships, unincorporated associations, and all other governmental and non-governmental entities.

8. "PLAINTIFFS" shall mean Biao Wang and West Palm Beach Firefighters' Pension Fund, as well as anyone acting on their behalf, including but not limited to their partners, associates, employees, representatives, attorneys or their attorneys' agents, and/or other PERSONS acting or purporting to act on their behalf.

9. "PLAINTIFFS' COUNSEL" shall mean the attorneys representing PLAINTIFFS in this ACTION, including Robbins Geller Rudman & Dowd LLP, Berman Tabacco, and Klausner, Kaufman, Jensen & Levinson, along with all of their agents, partners, associates, employees, representative or other PERSONS acting or purporting to act on their behalf, and all of their present or former subsidiaries, divisions, and/or affiliates.

10. "WPBFPF" shall mean West Palm Beach Firefighters' Pension Fund, Plaintiff in the above referenced Action, for which YOU serve as a third-party investment manager, and any and all of WPBFPF's respective parents, subsidiaries, affiliates, partners, investors, equity owners, employees or any other Person or entity acting under its direction or control.

11. "YOU" or "YOUR" shall mean Baron Capital Management, Inc., any of its direct or indirect subsidiaries, divisions, affiliates (including affiliated funds), predecessors, successors, agents, employees, representatives, advisors, and/or all other PERSONS acting or purporting to act on its behalf.

12. "ZYMERGEN SECURITIES" shall mean any common stock, preferred stock, debenture, option, bond, note, or other debt or equity interest, including any derivative interest and any direct or indirect, legal, or beneficial interest associated with Zymergen Inc.

## INSTRUCTIONS

1. In producing DOCUMENTS, YOU are requested to furnish all DOCUMENTS in YOUR possession, custody or control, regardless of whether such DOCUMENTS are possessed directly by YOU or anyone acting on YOUR behalf, including YOUR attorneys or their agents, employees, representatives, consultants, or investigators.

2. If any DOCUMENT requested herein is claimed to be privileged or otherwise withheld, in whole or in part, YOU must identify each DOCUMENT and provide the following information:

    a. The identity of the PERSON who created, wrote, or prepared the DOCUMENT and, if applicable, the PERSON to whom the DOCUMENT (or copies thereof) was sent;

    b. The date on which the DOCUMENT was created, written, prepared, or transmitted;

    c. The description of the nature of the DOCUMENT sufficient to evaluate the claim that the DOCUMENT may be withheld from production; and

    d. The present location and custodian of the DOCUMENT and whether the DOCUMENT is privileged or otherwise withheld, and why the DOCUMENT is privileged or withheld.

3. To the extent YOU object to any of the requests below and refuse to produce the requested DOCUMENT, YOU should produce all DOCUMENT responsive to the requests to which YOU object to the extent such partial production is not objectionable and explain in detail the basis on which such partial production was made.

4. Whenever appropriate, the singular form of a word shall be interpreted in the plural form or vice versa, and verb tenses shall be interpreted to include past, present, and future tenses. Additionally, the terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests any DOCUMENTS which might otherwise

be construed to be outside their scope. Unless specifically defined herein, all words and terms used herein shall be construed and interpreted according to ordinary custom, usage, and meaning.

**DOCUMENT REQUESTS**

1. DOCUMENTS concerning WPBFPF's purchases, other acquisitions, sales, other dispositions, or other transactions in or concerning Zymergen including:

    a. DOCUMENTS sufficient to show the details, including, without limitation, the date, price, number of shares, counterparty and any broker involved, of all of WPBFPF's acquisitions, sales, other dispositions, or other transactions in or concerning Zymergen;

    b. DOCUMENTS sufficient to identify all financial or trading accounts used to acquire, hold, purchase, sell, convert, transfer, or transact in ZYMERGEN SECURITIES on behalf of WPBFPF;

    c. all DOCUMENTS that YOU read, reviewed, received, or otherwise relied upon in connection with YOUR decision to purchase, hold, sell and/or otherwise transact in ZYMERGEN SECURITIES on behalf of WPBFPF;

    d. all DOCUMENTS relating to any research, modeling, projection, study, due diligence, investigation, analysis, or evaluation relating to Zymergen or ZYMERGEN SECURITIES;

    e. DOCUMENTS sufficient to show any hedging, risk transfer, loss or gain calculations, or leveraging strategy YOU have or had relating to YOUR investment in ZYMERGEN SECURITIES on behalf of WPBFPF;

    f. any report, statement, opinion, analysis, recommendation, or view of, or COMMUNICATION with any market or research analyst, investment advisor, broker dealer, financial institution, or any other PERSON retained or consulted by YOU, for the purpose of providing investment advice regarding the purchase, sale, holding, or any other transaction with respect to ZYMERGEN SECURITIES;

    g. any formal or informal investment policies, procedures, philosophy, strategies or practices used to analyze ZYMERGEN SECURITIES; and

    h. all DOCUMENTS concerning the performance of YOUR investment in ZYMERGEN SECURITIES on behalf of WPBFPF and any steps taken by YOU, or anyone else on YOUR behalf, to monitor, value, supervise, or investigate YOUR investment in ZYMERGEN SECURITIES on behalf of WPBFPF.

2. DOCUMENTS sufficient to identify all systems, applications, or services used to acquire, hold, purchase, sell, convert, transfer, transact or monitor YOUR investment in, purchase of, or position in, ZYMERGEN SECURITIES on behalf of WPBFPF, including, but not limited to, any model, algorithm, programmed trading mechanism, or automatic trading program used by YOU, or anyone else on YOUR behalf, to monitor, value, supervise, or investigate YOUR investments in ZYMERGEN SECURITIES on behalf of WPBFPF.

3. DOCUMENTS sufficient to identify those PERSONS who made, participated in or advised YOU in YOUR decision(s) to acquire, hold, purchase, sell, convert, or transfer ZYMERGEN SECURITIES or who were otherwise involved concerning YOUR investment in ZYMERGEN SECURITIES on YOUR behalf and/or on behalf of WPBFPF, including advisors, consultants, investment managers, agents, or representatives, and all DOCUMENTS concerning: (a) YOUR COMMUNICATIONS with any such PERSON relating to Zymergen or ZYMERGEN SECURITIES, including any remittance reports, account statements, valuation statements, profit or loss statements, or other documents regarding ZYMERGEN SECURITIES; and (b) the retention, employment, advisory or other relationship between YOU and any such PERSON, including any engagement letter or agreement between YOU and any such PERSON.

4. All DOCUMENTS concerning YOUR retention by WPBFPF, including, but not limited to, any marketing materials or pitch materials provided by YOU to WPBFPF.

5. DOCUMENTS relating to YOUR investment policies and guidelines, including policies for conducting research or diligence into actual or potential investments.

6. DOCUMENTS, organizational charts, or other graphical presentations or representations sufficient to describe the organization of YOUR employees, agents, or personnel responsible for YOUR investment decisions on behalf of WPBFPF.

7. All DOCUMENTS and COMMUNICATIONS relating to YOUR investment(s) in Zymergen, including, but not limited to, Zymergen's Series D financing and its IPO, and including:

   a. all DOCUMENTS that YOU read, reviewed, received, or otherwise relied upon in connection with YOUR decision to purchase, hold, sell and/or otherwise transact in ZYMERGEN SECURITIES;

   b. all DOCUMENTS relating to any research, modeling, projection, study, due diligence, investigation, analysis, or evaluation relating to Zymergen or ZYMERGEN SECURITIES

8. All DOCUMENTS and COMMUNICATIONS relating to any aspect of Zymergen's business or financials.

9. All DOCUMENTS and COMMUNICATIONS relating to: (i) the representations made in the registration statement and prospectus issued in connection with the Zymergen's April 2021 initial public offering; (ii) the accuracy of those representations; or (iii) any due diligence performed by YOU at any point in time, to determine the accuracy of those representations.

10. All COMMUNICATIONS between YOU and Zymergen, including any of its executives, board members, and employees.

11. All COMMUNICATIONS between YOU and WPBFPF about Zymergen.

12. All COMMUNICATIONS between YOU and PLAINTIFFS' COUNSEL.

13. DOCUMENTS sufficient to identify any PERSON (other than WPBFPF) on whose behalf YOU purchased or acquired ZYMERGEN SECURITIES.